UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DIANA ALICEA, NORMAN SMITH, DARWIN
BANCHON, AND EMILY CRUZ,

                Plaintiffs,

        -against-

CITY OF NEW YORK, POLICE OFFICER
O'GARA, TAX REG #913386, "Black," and
UNIDENTIFIED NEW YORK CITY POLICE
OFFICERS,

                Defendants.
------------------------------------------------------------X

04 Civ. 1243 (RMB)

**DECISION AND ORDER**

## I. Introduction

On or about February 17, 2004, Diana Alicea ("Alicea"), Norman Smith ("Smith"), Darwin Banchon ("Banchon"), and Emily Cruz ("Cruz") (collectively, "Plaintiffs") filed a complaint pursuant to 42 U.S.C. § 1983 ("Complaint" or "Compl.") against the City of New York ("City") and Officer Thomas O'Gara of the New York City Police Department ("O'Gara") (collectively, "Defendants").[1] Plaintiffs allege that "Alicea, Smith and Banchon were inside 154-02 Jewel Avenue, Apt 2C, Flushing, NY on January 22, 2003 at about 7:30 PM," and Cruz "was in the hallway outside the apartment" when "defendants entered the apartment claiming that they had a search warrant." (Compl. ¶ 19.) Plaintiffs claim that after entering the apartment,

---

[1] Plaintiffs also name as Defendants "an agent for the New York City Police Department believed to be known as 'Black,' and unidentified New York City police officers, employees and agents." (Compl. ¶ 10.) However, none of these unnamed defendants have been served with process, nor have Plaintiffs named any defendants, apart from the City and O'Gara, despite the fact that Defendants have engaged in full discovery. Accordingly, summary judgment is granted as to Plaintiffs' claims against these unnamed defendants. See Fed. R. Civ. P. 4(m); see also Cammick v. City of New York, No. 96-4374, 1998 U.S. Dist. LEXIS 18006, at *1 (S.D.N.Y. Nov. 17, 1998) (dismissing all claims against unnamed defendant police officers where those defendants were not served with process in the time granted by Fed. R. Civ. P. 4(m)).

1

Defendants "falsely arrested [plaintiffs] . . . unlawfully searched the[ir] home, destroyed property and took property, libeled and slandered the plaintiffs . . . [and] assaulted the plaintiffs, including but not limited to intentionally handcuffing the plaintiffs too tightly and refusing to loosen the handcuffs, causing physical injury." (Id.)  The Complaint also alleges that "Cruz was maliciously prosecuted and forced to appear in court until the charge was dismissed." (Id.) Plaintiffs state that their constitutional injuries resulted from the City's reckless failure "to adequately discipline, train or otherwise direct police officers concerning the rights of citizens," which led to a "systematic pattern" of illegal acts against Plaintiffs and others. (Id. ¶¶ 48, 54.) Plaintiffs claim their "rights have been violated under the Fourth and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983." (Id. ¶ 22.)  Plaintiffs also allege that Defendants' false arrest and malicious prosecution of Cruz violated "New York State common, statutory and constitutional law." (Id. ¶ 34.)  Plaintiffs each seek $500,000 in compensatory damages as well as an unspecified amount of punitive damages. (Id. ¶ 31.)

On or about March 24, 2005, Defendants City and O'Gara moved for summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), arguing that: "(1) plaintiffs have failed to state a claim for municipal liability under 42 U.S.C. § 1983;" "(2) defendant Officer O'Gara had no personal involvement in the arrests of plaintiffs Alicea, Smith, and Banchon;" "(3) there was probable cause to issue a summons to plaintiff Cruz;" "(4) plaintiff Cruz's claim for malicious prosecution fails because probable cause existed to issue the summons;" "(5) Officer O'Gara is entitled to qualified immunity;" and "(6) plaintiffs' state law claims fail as a matter of law." (Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, dated February 22, 2005 ("Def. Mem."), at 1-2.)  On or about August 10, 2005, Plaintiffs submitted a Memorandum of Law in Opposition to

2

Defendants' Motion for Summary Judgment ("Pl. Mem."), and on or about September 15, 2005, Defendants filed a Reply Memorandum of Law in Support of their Motion for Summary Judgment ("Def. Reply Mem.").[2] **For the reasons set forth below, Defendants' motion for summary judgment is granted in part and denied in part.**

II.     Background

On January 16, 2003, the Criminal Court of Queens County, New York, authorized a search warrant for the New York City Police Department, allowing officers to enter 154-02 Jewel Avenue, Apartment 2C, in Flushing, Queens, between the hours of 6:00 a.m. and 9:00 p.m. to search the apartment for "cocaine, narcotics paraphernalia, and records of narcotics transactions."  (See Criminal Court of New York County of Queens Search Warrant dated January 16, 2003 ("Search Warrant"), attached as Exhibit A to Defendants' Local Rule 56.1 Statement of Material Facts, dated Feb. 22, 2005 ("Def. 56.1 Stmt.").)  Plaintiffs do not challenge the validity of the Search Warrant.  (Plaintiff's (sic) Declaration and Statement Pursuant to Rule 56.1 in Opposition to Defendants' Motion for Summary Judgment, dated April 28, 2005 ("Pl. 56.1 Stmt.") ¶ 3; Def. 56.1 Stmt. ¶ 3.)  On January 22, 2003 at approximately 7:45 p.m., New York City police officers executed the Search Warrant and allegedly recovered cocaine and hashish, (Def. 56.1 Stmt. ¶¶ 5-9; see New York City Police Department Property Clerk's Invoice No. L637927, dated Jan. 22, 2003, attached as Exhibit E to Def. 56.1 Stmt.),

---

[2] In its reply, the City informed the Court that Plaintiffs' counsel, Thomas G. Sheehan, was suspended from the practice of law in the State of New York sometime after submitting Plaintiffs' opposition to the City's motion for summary judgment. (See Def. Reply Mem. at 2 n.2.) Pursuant to 22 NYCRR § 1022.27(b), a suspended attorney in New York "shall promptly notify . . . each client [and] the attorney for each party in a pending matter" and the notice "shall state that the attorney is unable to act as counsel due to . . . suspension" and "advise the client to obtain new counsel."  Further, 22 NYCRR § 1022.27(c) provides that "[w]hen a client in a pending action or proceeding fails to obtain new counsel, the . . . suspended . . . attorney shall move, in the court where the action or proceeding is pending, for permission to withdraw as counsel."

although "Plaintiffs contest that any narcotics [were] recovered from the apartment." (Pl. 56.1 Stmt. ¶¶ 8-9; Affidavit of Diana Alicea, dated Aug. 10, 2005 ¶ 3, attached as Exhibit 1 to Pl. 56.1 Stmt.)

Plaintiffs Alicea, Smith, and Banchon were inside the apartment at the time the warrant was executed. (Def. 56.1 Stmt. ¶ 10.) They were arrested and charged with multiple counts of criminal possession and sale of a controlled substance. (Id. ¶ 11; see On-Line Booking Arrest Sheets for Alicea, Smith, and Banchon, dated January 22, 2003 ("Arrest Sheets"), attached as Exhibit C to Def. 56.1 Stmt.) At some time prior to each plaintiff's criminal court arraignment, the Queens County District Attorney's Office dismissed all charges against them for "insufficient evidence to prosecute." (Queens County 343 Cases Police Department Reports for Alicea, Smith, and Banchon, for arrest date of Jan. 22, 2003, attached as Exhibit J to Def. 56.1 Stmt.) Alicea, Smith, and Banchon were released from custody at an unspecified time on January 23, 2003. (See Compl. ¶ 19.)

At the time the warrant was executed, O'Gara "was asked to stand outside the building" and took no part in the execution of the warrant. (Affidavit of Officer Thomas O'Gara, dated Feb. 11, 2005 ("O'Gara Aff.") ¶¶ 5, 10, attached as Exhibit B to Def. 56.1 Stmt.) O'Gara also did not participate in the arrest of Alicea, Smith, or Banchon, nor did he witness those arrests. (O'Gara Aff. ¶¶ 7-8.) O'Gara states that "I did not witness Emily Cruz inside of 154-02 Jewel Avenue or block the doorway to Apt. 2C at that location," however, "at the direction of a supervising officer, I escorted Emily Cruz to the PSA 9 Command and issued her a summons for disorderly conduct." (O'Gara Aff. ¶¶ 13-14.)

O'Gara signed two portions of the summons below the statement, "I personally observed the commission of the offense charged above [herein]. False statements made here are

4

punishable as a Class A Misdemeanor pursuant to Section 210.45 of the penal law.  Affirmed under penalty of perjury."  (See Summons No. 408812509-5 issued to Emily Cruz on January 22, 2003 ("Summons") at 1-2, attached as Exhibit H to Def. 56.1 Stmt.)  On the Summons below the heading, "Criminal Court Information (Describe Offense)," O'Gara wrote, "A/O observed def Blocking Pedestrian Traffic on the 2nd Floor stairwell, Impeding with Search warrant . . . ."  (See Summons at 2.)  O'Gara asserts that the phrase "A/O observed" referred to the arresting officer responsible for executing the Search Warrant, who was Officer Joseph Boccio.  (Supplemental Affidavit of Officer Thomas O'Gara, dated Sept. 15, 2005 ¶¶ 4-5, attached as Exhibit N to Supplemental Declaration of Hillary A. Frommer, dated Sept. 15, 2005; see also Arrest Sheets (identifying Officer Joseph Boccio in the "arresting officer information" section for the arrests of Alicea, Smith, and Banchon).)

Plaintiff Cruz attests that "at no time did I act disorderly and I never blocked pedestrian traffic in the second floor stairwell of the building at 154-02 Jewell Avenue, Queens, New York nor did I ever impede the police in their execution of the search warrant in Apartment 2C."  (Affidavit of Emily Cruz, dated Aug. 10, 2005 ("Cruz Aff.") ¶ 3, attached as Exhibit 2 to Pl. 56.1 Stmt.)  Cruz also asserts that she was "held in handcuffs and in custody for approximately two hours," and that "the handcuffs were placed on my wrists too tightly and I continuously complained to the defendant O'Gara that they were too tight and repeatedly asked him to loosen the handcuffs and he refused to loosen the handcuffs . . . caus[ing] me severe pain and suffering."  (Cruz Aff. ¶¶ 2, 4-5.)  O'Gara contests this statement, asserting that "Cruz was not present at the PSA 9 command nor in police custody for more than twenty-five (25) minutes," and that "at no time while she was in my presence did Emily Cruz request medical attention or make any complaints of any physical injuries."  (O'Gara Aff. ¶¶ 16-17.)

On March 21, 2003, "the summons issued to [P]laintiff Cruz was dismissed" by the Criminal Court of Queens County. (Def. 56.1 Stmt. ¶ 24; see Certificate of Disposition Criminal Court of the City of New York County of Queens, dated March 21, 2003 ("Cruz Disp."), attached as Exhibit I to Def. 56.1 Stmt.)

**III.   Legal Standard**

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court's task at the summary judgment stage "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Galo v. Prudential Resid. Servs., Ltd. Pshp., 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party initially bears the burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56(e)); see also Golden Pac. Bancorp. v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.") The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment

is appropriate, "a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant." Marvel Characters v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)); see also Almonte v. Florio, No. 02-6722, 2004 U.S. Dist. LEXIS 335, at *12 n.9 (S.D.N.Y. Jan. 13, 2004).

IV. Analysis

    A. **Plaintiffs' Claims against the City Under 42 U.S.C. § 1983**

Defendants argue that Plaintiffs "failed to properly plead and cannot prove municipal liability." (Def. Mem. at 5 (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978) ("Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort")).) Plaintiffs concede this point. (Pl. Mem. at i ("Plaintiffs concede there is no Monell liability.") Accordingly, all claims under 42 U.S.C. § 1983 against the City are dismissed with prejudice. See Napolitano v. Flynn, 949 F.2d 617, 620 (2d Cir. 1991) (finding plaintiff's claim should be dismissed "when, as here, a plaintiff admits that his complaint makes no cognizable claim for relief under federal law").

    B. **Claims by Plaintiffs Alicea, Smith, and Banchon Against Defendant O'Gara**

Defendants argue that all claims asserted by Plaintiffs Alicea, Smith, and Banchon against Defendant O'Gara are without merit because "all of the evidence put forth by defendants demonstrates that Officer O'Gara had no personal involvement whatsoever with the arrests of plaintiffs Alicea, Smith and Banchon." (Def. Mem. at 11.) Plaintiffs concede this point. (Pl. Mem. at i ("Plaintiffs Alicea, Smith and Banchon concede that Defendant O'Gara was not personally involved in their arrests").) Accordingly, all claims brought under 42 U.S.C. § 1983

7

by Plaintiffs Alicea, Smith, and Banchon against Defendant O'Gara are dismissed with prejudice. See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) ("in this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (internal citations omitted).

### C. Plaintiff Cruz's False Arrest Claim against Defendant O'Gara

Defendants argue that Plaintiff Cruz's claim of false arrest under § 1983 should be dismissed because O'Gara had probable cause to detain Cruz. (Def. Mem. at 11.) O'Gara contends that "I was informed by a supervising officer that Emily Cruz disrupted and prevented officers from executing a search warrant at 154-02 Jewel Ave., Apt. 2C, Flushing, New York." (O'Gara Aff. ¶ 12.) Plaintiffs respond that whether probable cause existed is a contested issue of fact because Cruz stated in her affidavit "that she did not obstruct pedestrian traffic nor impede with the police in their execution of the search warrant." (Pl. Mem. at 2.) Plaintiffs "agree that the fellow officer rule allows a police officer to rely on the report of another officer," but argue that "the Summons on its face in the case is alleged to be based on the sworn personal observations of the defendant O'Gara," creating an inconsistency in O'Gara's statements. (Pl. Mem. at 4.)

"The elements of a claim of false arrest under § 1983 are 'substantially the same' as the elements of a false arrest claim under New York law." Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992) (internal citations omitted). A plaintiff must prove: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (citing Broughton v. State, 37 N.Y.2d

8

451, 456 (N.Y. 1975)). Probable cause "is a complete defense to an action for false arrest." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).

In order to show probable cause, an officer may rely upon "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense ha[d] been committed by the person to be arrested." Calamia v. New York, 879 F.2d 1025, 1032 (2d Cir. 1989). And, an officer is "entitled to rely on the allegations of fellow police officers." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . or may require a trial if the facts are in dispute." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

Here, there is disputed testimony and material issues of fact exist as to whether O'Gara had probable cause to detain and issue a summons to Cruz. O'Gara claims that "I did not witness Emily Cruz inside of 154-02 Jewel Avenue or block the doorway to Apt. 2C at that location," and "at the direction of a supervising officer, I escorted Emily Cruz to the PSA 9 Command and issued her a summons for disorderly conduct," (O'Gara Aff. ¶¶ 13-14), but he also signed portions of the Summons which stated, "I personally observed the commission of the offense charged." (Summons at 1-2.) In addition, Defendants have not submitted uncontroverted evidence that Plaintiff Cruz did, in fact, disrupt and prevent officers from executing the Search Warrant. See Carter v. Port Auth. of N.Y. & N.J., No. 03-8751, 2004 U.S. Dist. LEXIS 25633, at *19-20 (S.D.N.Y. Dec. 17, 2004) ("[g]iven that there is conflicting evidence" as to whether probable cause existed, "summary judgment on these issues must be denied").

### D. Plaintiff Cruz's Malicious Prosecution Claim Against Defendant O'Gara

Defendants also argue that probable cause existed as a defense to Plaintiff Cruz's malicious prosecution claim. (Def. Mem. at 14.) Plaintiffs respond that Cruz's affidavit, stating that she did not act disorderly, creates "a contested issue of fact to be decided by the fact finder." (Pl. Mem. at 2-3.)

"Because there are no federal rules of decision for adjudicating § 1983 actions that are based upon claims of malicious prosecution, [courts] are required by 42 U.S.C. § 1988 to turn to state law . . . for such rules." Conway v. Mt. Kisco, 750 F.2d 205, 214 (2d Cir. 1984). An action for malicious prosecution under New York state law requires: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003). Under New York law, "the existence of probable cause is a complete defense to a claim of malicious prosecution." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).

A lack of probable cause, "while not dispositive - 'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred.'" Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (citing Conkey v. State, 427 N.Y.S.2d 330, 332 (4th Dep't 1980)). As noted above, material issues of fact remain as to whether O'Gara had probable cause to issue Cruz a summons, (see supra at 9.), and, relatedly, material issues of fact also remain as to whether O'Gara acted with actual malice. See Lowth, 82 F.3d at 573.

### E. Defendant O'Gara's Defense of Qualified Immunity

Defendants claim that O'Gara is entitled to qualified immunity for all claims asserted against him. (See Def. Mem. at 15 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).)

Plaintiffs state that O'Gara "should not receive immunity where his sworn allegations are admittedly false," i.e. with respect to his personal observation of Cruz's conduct. (Pl. Mem. at 4.)

"An arresting officer is entitled to qualified immunity from a suit for damages . . . if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). However, "the existence of . . . factual disputes precludes a meaningful resolution of the qualified immunity defense at the summary judgment stage." Johnson v. Ganim, 342 F.3d 105, 117 (2d Cir. 2003). The material issues of fact that remain as to whether probable cause existed preclude a finding of qualified immunity for O'Gara.

### F. Plaintiffs' State Law Claims

Defendants argue that Plaintiff Cruz's claims brought under New York state law must be dismissed because Cruz failed to file a (necessary) notice of claim as required by New York Municipal Law § 50-e. (Def. Mem. at 18-19.) Plaintiffs do not respond to this assertion with respect to Cruz.[3]

The general rule is that "state notice of claim statutes apply to state law claims." Kyne v. Carl Beiber Bus Servs., 147 F. Supp. 2d 215, 217 (S.D.N.Y. 2001). New York Municipal Law

---

[3] Plaintiffs do argue that Plaintiff Smith filed a timely notice of claim pursuant to New York State law and that he is entitled to assert pendent state law claims. (See Pl. Mem. at 4-5; Notice of Claim of Norman Smith, dated Jan. 23, 2003 ("Smith Notice"), attached as Exhibit 3 to Pl. 56.1 Stmt.) However, in the Complaint, only Cruz asserts pendent state law claims against any Defendant; the remaining Plaintiffs' claims are brought under § 1983. (See Compl. ¶¶ 32-43 (asserting all causes of action under state law "on behalf of Plaintiff Cruz"); see also Compl. ¶¶ 14-18 (entitled "Pendent State Claims").) To the extent Plaintiff Smith is attempting to raise claims for the first time in response to Defendants' summary judgment motion, they are "not properly before the Court and cannot be considered." Fastag v. Kelly, No. 04-9037, 2005 U.S. Dist. LEXIS 14664, at *29 n.62 (S.D.N.Y. Jul. 19, 2005).

11

requires that any plaintiff bringing an action against a city or its officers file a notice of claim "within 90 days after the claim arises." N.Y. Gen. Mun. § 50-e (2005); see also Llerando-Phipps v. City of New York, No. 02-9939, 2005 U.S. Dist. LEXIS 22246, at *13 (S.D.N.Y. Sept. 30, 2005). If plaintiffs do not file this notice of claim, the Court must dismiss their action. See N.Y. Gen. Mun. § 50-i (stating that "no action or special prosecution shall be prosecuted or maintained" against a city or its officers "unless a notice of claim shall have been made and served . . . in compliance with section fifty-e of this chapter").

Because Cruz has failed to establish or allege that she filed the requisite notice of claim in the allotted 90-day period, all state law claims filed by her are dismissed with prejudice. See Allocco Recycling, Ltd. v. Doherty, 378 F. Supp. 2d 348, 374 (S.D.N.Y. 2005) ("[t]imely service of a notice of claim is a prerequisite to suit, without which a plaintiff fails to state a claim").

## V. Conclusion and Order

For the reasons stated above, Defendant's motion for summary judgment is granted in part and denied in part.

The parties are directed to appear at a status/settlement conference with the Court on November 30, 2005 at 11:00 a.m., in Courtroom 706 of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York 10007. **The Court directs the parties to engage in good faith settlement negotiations prior to the conference with the Court.**

Dated: New York, New York
November 15, 2005

_RMB_
**RICHARD M. BERMAN, U.S.D.J.**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/15

12